United States Courts
Southern District of Texas
FILED

NOV - 4 2019

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO. |
| DANNENBAUM ENGINEERING CORPORATION & ENGINEERING HOLDING CORPORATION | § § § § § | 19 CR 795 |

## INFORMATION

The United States Charges:

### Introduction

At all times material to this information:

1. Defendant Dannenbaum Engineering Corporation ("DEC") was a privately owned civil engineering firm headquartered in Houston, Texas, within the Southern District of Texas, and with satellite locations in Austin, Dallas, San Antonio, Laredo, and McAllen. Defendant Engineering Holding Corporation (EHC) was the parent company of DEC.

2. James D. Dannenbaum (hereinafter "Dannenbaum") was a resident of Houston, Texas, located in the Southern District of Texas. Dannenbaum was the majority owner of EHC and the controlling shareholder of DEC, as well as President and Chief Executive Officer of DEC.

3. Former Employee A was a resident of McAllen, Texas, within the Southern District of Texas. Former Employee A served as the lead project manager on most of DEC's South Texas work.

## The Federal Election Laws

4. In the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code Sections 30101, et seq. ("FECA") (formerly Title 2, United States Code Sections 431, et seq.), Congress prohibited certain financial influences on the election of candidates for federal office, including the offices of United States Senator, Member of the United States House of Representatives, and President of the United States, and provided for public disclosure of the financing of federal election campaigns. In particular:

    a) To promote transparency and prevent individuals from circumventing these rules, the FECA limited the amount and source of money that could be contributed to a federal candidate, or to an individual candidate's authorized campaign committee, including joint fundraising committees, and to political campaign committees, commonly referred to as "political action committees" or "PACs."

    b) To prevent individuals from circumventing the FECA, and to enable the detection of attempts to circumvent it, the FECA prohibited any person from making contributions in the name of another, including by

giving funds to a straw donor for the purpose of having the straw donor pass the funds on to a federal candidate's campaign or to a federal candidate's federal campaign committee, joint fundraising committee, or political action committee, thus falsely indicating that the straw donor was the true source of the money. The FECA also prohibited contributing in the name of another to an independent expenditure-only committee, or "Super PAC," to influence the outcome of a federal campaign.

c) The FECA prohibited corporations from making contributions to candidates in connection with any federal general election and in connection with any federal primary election, and prohibited officers and directors of any corporation from consenting to any such prohibited contribution by the corporation.

d) In 2015, 2016, and 2017, the FECA limited contributions from any one individual to any one candidate's primary and general election campaigns to $2,700 per campaign, for a total of $5,400. In 2015, 2016, and 2017, the FECA limited contributions from any one individual to a particular PAC to a total of $5,000 in a calendar year.

5. The Federal Election Commission was an agency and department of the United States with jurisdiction to administer the limits and prohibitions of the FECA,

and to compile, publicly report and make available accurate information about the source and amounts of contributions to candidates for federal office.

### The Conduit Scheme

6. "Candidate #1-2017" was a candidate for Member of the United States House of Representatives. "Committee #1-2017" was Candidate #1-2017's principal campaign committee. In or about February 2017, Defendants, through Dannenbaum and Former Employee A, solicited DEC employees to contribute to Committee #1-2017, representing that they would be reimbursed in full for their contributions. In or about February 2017, Former Employee A and three other employees of DEC contributed to Committee #1-2017 in their own names, for a total of $10,000. Each conduit was reimbursed using funds derived from the corporate bank account of the Defendants. Neither Defendants, Dannenbaum, nor Former Employee A revealed to Committee #1-2017 that DEC was the true source of these funds.

7. "Candidate #2-2017" was a candidate for the office of United States Senator. "Committee #2-2017" was Candidate #2-2017's principal campaign committee. In or about 2017, Defendants, through Dannenbaum and Former Employee A, solicited DEC employees to contribute to Committee #2-2017, representing that they would be reimbursed in full for their contributions. In or about February 2017, at Dannenbaum's and Former Employee A's solicitation and

direction, Former Employee A and three other employees of DEC contributed to Committee #2-2017 in their own names, for a total of $10,000. Each conduit was reimbursed using funds derived from the corporate bank account of the Defendants. Neither Defendants, Dannenbaum, nor Former Employee A revealed to Committee #2-2017 that DEC was the true source of these funds.

8. "Candidate #3-2017" was a candidate for Member of the United States House of Representatives. "Committee #3-2017" was Candidate #3-2017's principal campaign committee. In or about February 2017, at Dannenbaum's solicitation and direction, Former Employee A contributed $2,500 to Committee #3-2017 and was reimbursed using funds derived from the corporate bank account of the Defendants. Neither Defendants, Dannenbaum, nor Former Employee A revealed to Committee #3-2017 that DEC was the true source of these funds.

9. On or about February 14, 2017, Dannenbaum and Former Employee A discussed their plan to use corporate funds to contribute a total of $10,000 to the reelection campaign of Candidate #1-2017, and a total of $10,000 to the reelection campaign of Candidate #2-2017. During the conversation, Dannenbaum directed Former Employee A, "For the federal, you know you'll have to split it up." Former Employee A replied, "Yeah, I was gonna make sure I get it split up right." Dannenbaum replied, "Yeah-I-I normally have all the checks together and then staple, you know, my business card . . . to the checks so that-so there's no confusion

5

about . . . where they came from."

10. In or about February 2017, Dannenbaum submitted a "Check Request Form" to DEC's finance office, directing that a $21,000 payment be issued to Former Employee A. On the form, Dannenbaum indicated that the check was to be a payment for a "Marketing Advance."

11. In or about February 2017, Dannenbaum caused Former Employee A to receive a corporate check in the amount of $21,000 with the abbreviation "MKT ADV" noted on the check stub. After receiving this corporate check, Former Employee A, in turn, wrote three personal checks to three DEC employees. The amount of these checks mirrored the total amount that each DEC employee contributed to the campaigns identified by Defendant and Former Employee A. FEC records show that Former Employee A and the three DEC employees' February 2017 campaign contributions totaled $10,000 to each of the two campaigns.

## COUNT ONE
## Making Contributions in the Name of Another
## (52 U.S.C. §§ 30109(d)(1)(D)(i) & 30122)

12. Paragraphs 1 through 11 of this information are realleged and incorporated by reference as though fully set forth herein.

13. In or about February 2017, in the Southern District of Texas and elsewhere, the Defendants,

**ENGINEERING HOLDING CORPORATION
&
DANNENBAUM ENGINEERING CORPORATION,**

and others known and unknown, aided and abetted by Dannenbaum and Former Employee A, knowingly and willfully made and caused contributions of money, aggregating more than $10,000 and less than $25,000 during the 2017 calendar year, to be made in the names of others to the authorized campaign committees of candidates for the United States House of Representatives and the United States Senate.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(D)(i) (formerly codified as Title 2 U.S.C. §§ 441f and 437(d)(1)(D)(i)) and Title 18, United States Code, Section 2.

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
United States Department of Justice

TIM BRALEY
Attorney for the United States
United States Attorney's Office
Southern District of Texas

BY: */s/ Jessica C. Harvey*
Jessica C. Harvey
Trial Attorney

Carolyn Ferko
John Pearson
Assistant United States Attorneys

8